1  ROBERT WAGGENER - SBN: 118450
   LAW OFFICE OF ROBERT WAGGENER
2  214 Duboce Avenue
   San Francisco, California 94103
3  Phone:       (415) 431-4500
   E-Mail:      rwlaw@mindspring.com
4
5  Attorney for Defendant JERARDO ZARAGOZA

6
                   UNITED STATES DISTRICT COURT
7
                  NORTHERN DISTRICT OF CALIFORNIA
8

9
   UNITED STATES OF AMERICA              **Case No. CR 25-0156-004 YGR**
10
                          Plaintiff,     **DEFENDANT JERARDO ZARAGOZA'S**
11                                       **SENTENCING MEMORANDUM**
           v.
12                                       Date:    February 12, 2026
   JERARDO ZARAGOZA,                     Time:    9:30 a.m.
13                                       Judge:   Honorable Yvonne Gonzalez
                          Defendant.              United States District Judge
14  _____/

15
   **To:   THE UNITED STATES DISTRICT COURT; ASSISTANT UNITED STATES**
16  **ATTORNEY KEVIN YEH; AND TO THE CLERK OF THE COURT:**

17                           **INTRODUCTION**

18         47 year old JERARDO ZARAGOZA appears before this Court for sentencing following

19  his conviction of one count of Conspiracy to Distribute and Possess with Intent to Distribute

20  Cocaine and Methamphetamine (21 U.S.C. §§ 846(a)(1), 841(a)(1)(C). Mr. Zaragoza has

21  admitted to the overall conspiracy set out in the Indictment, and direct participation with two

22  other conspirators named in the Indictment. The Presentence Report (PSR) was prepared by

23  United States Probation Officer Razan Ghishan and she has calculated Zaragoza's guideline

24  Total Offense Level (TOL) at 10, and his Criminal History Category (CHC) at II, calling for an

25  advisory Guidelines sentencing range of 8-14 months. Mr. Zaragoza falls within Zone B of the

26
27
28  **DEFENDANT ZARAGOZA**
    **SENTENCING MEMORANDUM**

Sentencing Table, leaving the Court a number of sentencing options, including probation. (See PSR ¶ 91) Ms. Ghishan has recommended the imposition of 10 months of imprisonment. In the plea agreement the government agreed to recommend a sentence no higher than the low end of the range associated with the Guidelines, in this case 8 months, and has now followed through with their sentencing memorandum making that recommendation. (ECF112)

Mr. Zaragoza has been in continuous custody since June 17, 2025, amounting to approximately 5 days shy of 8 months on the day of sentencing. It is submitted that a sentence of probation with credit for time served is a fair, just and reasonable sentence for Mr. Zaragoza. The longest period of time Mr. Zaragoza has served in custody is 90 days for a marijuana conviction in 2002 when he was 24 years old, a conviction that has now been set aside and dismissed. (See PSR ¶ 43)

Mr. Zaragoza entered into his plea agreement as to the single count on November 20, 2025. He has spent his entire time in custody at the West County Jail Facility for Contra Costa County, located in Richmond. As explained below, he has made the most of his time at the West County Facility, and was fortunate to not be transferred to Taft after the entry of his plea.

Factual and legal issues regarding the content of the PSR have not quite all been resolved, and there are a couple of minor factual corrections which are set out below. Factors set forth in 18 U.S.C. §3553 regarding Mr. Zaragoza and his personal background will be discussed below.

**I.**
**THE OFFENSE CONDUCT**

What started out a major Mexican cartel investigation eventually lead down the food chain to the Bay Area, and a methamphetamine purchase by a federal confidential informant from Co-conspirator 1, co-defendant in the Indictment, Donald Young. Elderly Mr. Young turned out to be a local Oakland drug dealer and was also involved in small time illegal firearms sales,

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**

selling a weapon or two at a time. Mr. Zaragoza came to the attention of the authorities because he was inside Mr. Young's residence when the controlled buy methamphetamine sale to the confidential informant took place in April of 2024. Zaragoza was not involved in the sale and happened to be in Young's residence watching television while the sale took place in another room. Agents were intrigued by Mr. Zaragoza when they did some research, because Mr. Zaragoza was from Mexico and often traveled to, and communicated with people from Mexico. An eventual wiretap on Young's phone, however, revealed that Mr. Zaragoza was not a Mexican cartel "bulk load" supplier to Young as suspected by the agents. Rather, he was of Mexican heritage and traveled to Mexico for family and a girlfriend, and turned out to be a relatively small time supplier to Mr. Young on a local level. He had a friendly and caring relationship with Mr. Young, even though he knew Young peddled in the drug trade. Elderly Mr. Young had serious medical and mobility issues, and Mr. Zaragoza helped him out and regularly visited his house, picked up and brought him his prescribed medications, and communicated with him.

The interceptions over the Young wiretap, and also the eventual wiretap on co-conspirator "runner" Demarco Riley, clearly exposed the conspiratorial relationship of the three defendants. However, it also became clear that Mr. Young had a more expansive role in drug sales and distribution, and weapon sales. Young would often ask Zaragoza if he could find drugs for him that he could resell, and it became clear that Young was working on small margins and had to be reminded that somebody who brokered drugs for Young had to be paid. The relatively small-time nature of Zaragoza's involvement is exemplified by the plea agreement and the described $300 delivery arranged by Zaragza of a "zip" ounce quantity of drugs delivered by Co-

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**

conspirator 2, Riley.[1] There was never a controlled buy or seizure of drugs from Mr. Zaragoza

other than some lines of cocaine and minuscule drug remnants found in his basement when he

was arrested at his residence. As described in the PSR, during the time of his involvement in the

conspiracy, Mr. Zaragoza unfortunately developed his own personal cocaine habit, which he now

very much regrets. Around December of 2024 Mr. Zaragoza came to his senses and cut off his

conspiratorial drug dealing relationship with Mr. Young. Six months later he was arrested on the

present charges at his home. When the arrest and search warrants were executed at Mr.

Zaragoza's residence, numerous firearms were found within the residence, but none of them were

illegal and Mr. Zaragoza was not prohibited from possessing weapons.

## II.
## THE PRESENTENCE REPORT AND RECOMMENDATION

All parties are in agreement as to the Guidelines calculation. There are no legal defense

objections to the content of the PSR. There are a couple of factual corrections and/or

clarifications which should be made to the PSR, described here:

- Paragraph 69 of the PSR states the "defendant's gang moniker is 'Jerry'". On page 3 of
  the PSR, at the request of Mr. Zaragoza after the submission of the draft PSR, the
  probation officer added the language "According to the defendant, he explains that he has
  never been known as 'Jerry' and denies any gang membership or affiliation". That same
  language and statement should be added to paragraph 69.

---

[1] As noted in the government's sentencing memorandum, in his plea agreement Mr. Zaragoza indeed admitted he "was trying to get as much methampetamine" as he could. This quotation and statement was one of the intercepted conversations between Young and Zaragoza over the Young wiretap. (See PSR ¶ 15) In the larger context of the wiretap, Young was often trying to get Zaragoza to find drugs for him so he could sell them. Nonetheless, there was never any evidence over the wiretap or otherwise that Mr. Zaragoza ever found a methamphetamine source, or bought, sold, or delivered methamphetamine to or from Mr. Young or anyone else.

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**

- Paragraph 76 indicates that "Mr. Zaragoza graduated and received his high school diploma on June 25, 2025". The actual date of Mr. Zaragoza's graduation was October 8, 2025 during the time that he was in custody at the West County Jail Facility. Mr. Zaragoza's significant accomplishments during the time he has been in custody are discussed below.

- The Addendum to the PSR has the wrong case name and number in its heading.

- On page 2 of the Sentencing Recommendation in the first sentence there is an incorrect factual assertion that "According to the defendant, the basement is separated from the residence and has a separate entrance, which was reportedly used by his son and stepson". This statement is a confusion of the information in paragraphs 20 and 22 of the PSR. Mr. Zaragoza's son and his stepson shared a bedroom that had been converted from the garage. Mr. Zaragoza had exclusive access to the basement of the residence, which had its own separate entrance.

By means of his plea agreement and the statements quoted in the PSR, Mr. Zaragoza has clearly accepted responsibility for his illegal conduct. (See PSR ¶¶ 26-30) His acceptance is further supported by his handwritten letter to the Court and life history which was delivered to the Court with the PSR.

**III.**
**BACKGROUND OF THE DEFENDANT**

The probation officer has provided a fair, over-arching description of Mr. Zaragoza's background in the "Offender Characteristics" portion of the PSR (¶¶ 58-88). He was born in Merced and has returned to Merced, after spending 7 years in Mexico and 20 years in Los Angeles. He did not have a high school diploma until recently, but has had steady employment throughout his life. He was a wide variety of prior jobs, but most recently has provided for

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**

himself through mainly self-taught handyman and mechanical skills. He has aspirations of continuing his education and becoming an X-ray technician or obtaining an ownership interest in a construction company. (PSR ¶ 65)

Mr. Zaragoza is very close to his family and his children, as demonstrated by the support letters attached hereto as Exhibit A. He has talked to his teenage children every day he has been in custody, and his life history written for the Court and portions of the PSR clearly tell a story of a devoted, loving, caring father. The handwritten life history written by Mr. Zaragoza and presented to the Court is a very revealing and informative document. The religious parents who raised him were field workers who taught him the values of hard work, family, and education. He is determined to get his life back on track with those values in mind.

Mr. Zaragoza has never been married, but has children as a result of two significant relationships. (PSR ¶ 64) 13 years ago when his son was born, to his complete surprise the hospital informed him that his son, who was born prematurely, had methamphetamine in his system. Mr. Zaragoza found out that the mother of his two young children was addicted to methamphetamine. His son spent three months in the hospital and Mr. Zaragoza began his quest to separate from the mother and get sole custody of his two young children. Ultimately he was successful, but only after going through multiple hoops with the Los Angeles court system, that included his own completion of a two year drug program. (See PSR ¶ 74) Once he got custody of his young children, he struggled to make things work, including simple things like learning how to cook and do laundry properly.  His employment and survivable income were impacted because he had to deliver and pick up the kids from their schools, and assume all the responsibilities of being a single parent. He persevered and got the kids into their teens. He then got sidetracked by his conspiratorial drug relationships and his personal use of cocaine, and was arrested by federal

**DEFENDANT ZARAGOZA
SENTENCING MEMORANDUM**
-6-

authorities. The present case has been a major eye-opener for Mr. Zaragoza and he is committed

to being mentally and physically present and supportive of his children as they grow older and

become young adults.

**IV.**
**DEFENDANT ZARAGOZA'S CRIMINAL HISTORY**

When Mr. Zaragoza was 24 years old living in Los Angeles he suffered a felony

conviction based on the California marijuana laws in existence at the time. Only a handful of

marijuana was involved, and Mr. Zaragoza is fortunate that those marijuana laws have been

repealed and his conviction has been set aside. Beyond that, he has suffered five misdemeanor

convictions, all driving or vehicle related, and with the last one occurring eight years ago.[2] He

has no prior history of violence, illegal weapon possession, or drug dealing or possession other

than the 20+ year old marijuana conviction.

**V.**
**POST-ARREST ACCOMPLISHMENTS AND REHABILITATION**

Mr. Zaragoza was ordered detained after his arrest on this case, and has been housed in

the Richmond West County Jail Facility ever since. Soon after his arrival, he became a trustee in

the jail, and has been a model inmate. His accomplishments during the time he has been in

custody are generally described in paragraph 76 of the PSR, but deserve greater explanation and

elaboration.

Through the education programs at the jail facility Mr. Zaragoza was able to obtain his

high school diploma. This was not a series of courses to get a GED certificate, but a serious set of

---

[2] The conviction was for driving without an Interlock Device, for which he received a fine and a suspended sentence. Mr. Zaragoza explains that the car in which he had the Interlock Device broke down, and he got pulled over for a minor traffic violation in a substitute vehicle that did not have an installed device.

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**

academic classes through the Contra Costa Adult School that allowed him to literally participate in a cap and gown ceremony to get his diploma. (See Exhibit B) He is extremely proud of this accomplishment and his motivation was both for himself and to set an example for his children.

Beyond the pursuit of his diploma, Mr. Zaragoza took advantage of every opportunity presented to him at the jail to learn and improve himself for his future. In the time he has been at the jail he has earned numerous certificates for all of extra-curricular courses, many of which included dozens of hours of classes and training. One example of his accomplishment is his participation in the three phase DEUCE program dealing with Addiction, Relapse Prevention Planning, and Community Re-Entry. The program took over 180 hours of commitment to gain the three certificates. (See Exhibit C) He earned numerous other certificates with over 300 hours of participation commitment. (See Exhibit D) He has also been consistently participating in Bible Study. (See Exhibit E) As mentioned in paragraph 76 of the PSR, Mr. Zaragoza has also been able to participate in additional courses with his jail issued tablet, and has earned another four certificates for other courses, including Breaking the Cycles of Self Destruction, How to Become a Better Father, and Critical Thinking. Mr. Zaragoza intends to continue his education when released.

**VI.**
**ANALYSIS PURSUANT TO 18 U.S.C. § 3553(a)**
**AND SENTENCING RECOMMENDATION**

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. *See*, 18 U.S.C. § 3553(a). Those purposes include the need: (1) to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from the defendant; and (4) to provide the defendant necessary treatment and training. 18 U.S.C. § 3553(a)(2). At its core, §

**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**
-8-

3553(a) ensures that Mr. Zaragoza's personal history and characteristics be evaluated in imposing sentence.

The offense for which Mr. Zaragoza has been convicted is serious, and is deserving of punishment. He has been in custody just shy of eight months, and he has absolutely made the most of his time in custody, demonstrating his desire to get his life back on track. He has strong family and community support who can help him in his return to a lawful and productive lifestyle. His children provide plenty of incentive to be present and guide them on their path to adulthood. He has job skills and solid aspirations for his future. Given all the overall circumstances and Mr. Zaragoza's personal history and characteristics, it is submitted that a sentence of time served and imposing a set of probationary conditions is completely sufficient to comply with the purposes of sentencing.

## **CONCLUSION**

For the foregoing reasons, Defendant requests this Court to impose the sentence suggested above. It is not necessary to impose a fine in this case.


Dated: February 5, 2026                Respectfully submitted,


                                              _/s/Robert Waggener_____
                                       ROBERT WAGGENER
                                       Attorney for Defendant
                                       JERARDO ZARAGOZA


**DEFENDANT ZARAGOZA**
**SENTENCING MEMORANDUM**
                                 -9-